COMEGYSS (VASSE v.). See Case No. 16,894.

## Case No. 3,050.

### The COMET.

[1 Abb. U. S. 451; 2 Chi. Leg. News, 301; 5 Am. Law Rev. 184.][2]

District Court, N. D. New York. Feb. Term, 1870.

#### COLLISION—INSCRUTABLE FAULT—DAMAGES.

1. Where, in a collision case, the evidence is so conflicting or uncertain that the court cannot determine upon which vessel the real cause of the collision should be charged, the damages should be divided between the colliding vessels.

2. The rules and authorities governing the apportionment of damages for collision, in cases of mutual fault, inscrutable fault, and inevitable accident,—elaborately reviewed.

[Cited in The Max Morris, 28 Fed. 884.]

In admiralty. Hearing upon a libel for collision.

The libel in this case was filed by John V. Detlor and others, owners of the Silver Spray, against the Comet, the Lake and River Transportation Company, claimants; and came on for hearing upon the proofs.

The question which vessel was in fault for the collision, was closely contested. But as the decision proceeds upon the ground that the evidence did not enable the court to determine this question, and that the damages must be awarded upon the principle applicable to cases of inscrutable fault, that portion of the opinion which relates to the question of fault is omitted.

George B. Hibbard, for libelant.

H. B. Brown and John Ganson, for claimants.

HALL, District Judge. This is a cause of collision and damage, prosecuted by the owners of the side-wheel steamer Silver Spray, a Canadian vessel, against the propeller Comet, an American vessel, to recover the value of the Silver Spray and her cargo, which were sunk by a collision with the Comet, about ten o'clock in the evening of August 30, 1869, in Lake Huron, near the entrance into St. Clair river, at the foot of that lake.

The night was clear, and the weather fair; and there is nothing in the testimony tending to show that the collision occurred without culpable negligence or gross unskillfulness on the part of those in charge of at least one of the colliding vessels.

It was, therefore, necessarily conceded, upon the argument, that the case was not one of inevitable accident; but the testimony was in many respects conflicting and uncertain, and in some respects entirely irreconcilable; and it is not possible to determine, with absolute certainty, the particular fault or faults to which the collision should be attributed.

(The opinion here proceeds with a review of the evidence bearing upon the question—which vessel was to blame?)

Upon the whole evidence, it can hardly be doubted that there was gross and culpable negligence on both vessels, and the case will be disposed of as one of mutual fault—it being held that this may be properly done upon a clear and satisfactory preponderance of testimony, although it may be impossible to say that there is no reasonable doubt in regard to the specific and particular fault of each vessel, which was one of the proximate causes of the collision.

If, however, it is not a case of mutual fault,

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission. 5 Am. Law Rev. 184, contains only a partial report.]

it is one in which, from the conflicting and unreliable character of the evidence, it is impossible to determine upon which vessel the real cause of the collision should be charged, and therefore a case of inscrutable fault. In either case, the damages must be divided between the colliding vessels. And such will be the final decree of this court in the present case.

As the conclusion that a libelant, in a collision case, is entitled to recover upon a clear and satisfactory preponderance of testimony, although there may be reasonable doubt as to which party is to blame, and the conclusion that in a case of inscrutable fault the damages must be equally borne by the colliding vessels, are directly opposed to a statement of the reporter's headnote to the case of The Grace Girdler, 7 Wall. [74 U. S.] 196, and as that head-note appears to be sustained by a dictum of Mr. Justice Swayne, whose character and learning are deservedly held in very high respect, it has been deemed proper to attempt to show that the head-note referred to was founded solely upon an obiter dictum of that learned justice, and not upon the decision of the court; and also to state the reasons which have induced a decision in opposition to the dictum referred to.

The statement of the head-note referred to is as follows: "Where, in a case of collision, with loss, there is reasonable doubt as to which party is to blame, the loss must be sustained by the one on which it has fallen."

A careful examination of the report of the case of The Grace Girdler [supra] will show that no such question was decided in that case; and that the only foundation for this statement of the reporter is a mere dictum of the learned justice just named, upon a question not discussed by him, and not involved in the decision of the court. Upon the full report, it is very clear that Mr. Justice Swayne and the majority of the court based their decision upon the conclusion that the Grace Girdler was free from fault, and that if the injured vessel was not in fault, it was a case of inevitable accident.

Mr. Justice Swayne states that the point that the injured vessel (the yacht Ariel) was in fault, was not pressed by the counsel representing the Grace Girdler; and that, for the purposes of the case, they held that the yacht was blameless. It is true that he immediately adds: "But she suddenly thrust herself before the schooner (the Grace Girdler) and took the latter by suprise;" and that he subsequently states that "the controlling fact, in the case under consideration, is the sudden change of the leading vessel (the Ariel) to a course across the bows of the one behind her." But these statements were not, apparently, deemed inconsistent with the position that the case was one of inevitable accident; for, immediately afterwards, he proceeds to dispose of the question raised by the appellants under the seventeenth article of the act of 1864,

"fixing rules and regulations for preventing collisions on water," and, in conclusion, states: "It would be a strange result if the statute should make an innocent vessel liable for an inevitable accident." After this, there is a short paragraph, stating what is required to entitle a libelant, in a collision case, to recover full indemnity; and then the learned justice proceeds as follows, viz.: "Inevitable accident is when a vessel is pursuing a lawful avocation, in a lawful manner, using the proper precautions against danger, and an accident occurs. The highest degree of caution that can be used is not required. It is enough that it is reasonable, under the circumstances, such as is usual in similar cases, and has been found by long experience to be sufficient to answer the end in view—the safety of life and property. When there is a reasonable doubt as to which party is to blame, the loss must be sustained by the party on whom it has fallen."

And near the conclusion of the opinion it is stated that the district court had acquitted the Grace Girdler, and dismissed the libel; that the circuit court had affirmed the decree, on appeal; that to warrant a reversal it must be clear that the lower courts had committed an error; and that the case was not one of that character.

From the foregoing statements, and indeed from the entire opinion of Mr. Justice Swayne, it is quite evident that the case was decided by the majority of the court as one of inevitable accident, and this is confirmed by the statement of Mr. Justice Davis, in his very brief dissenting opinion (which was concurred in by the chief justice and Mr. Justice Clifford), that he "could not agree that the collision was the result of inevitable accident."

It is also confirmed by the fact that, so far as can be ascertained from the report, the question of the rule of damages in cases of inscrutable fault, had not been discussed by counsel, and that it does not appear that any of the American decisions or authorities bearing upon that question had been cited or discussed by the learned counsel who argued the case, or been considered by either of the judges of the court. Indeed, the only authority referred to in support of the dictum under consideration, is the case of The Catherine of Dover, 2 Hagg. Adm. 154, and the dictum itself seems to be only an incidental remark, rather than the deliberate expression of an authoritative judicial opinion. And certainly there is nothing in the opinion, or in the full report, to show that the point had been carefully considered by the learned judge or by his associates on the bench.

The case of The Catherine of Dover (decided in 1828) is the first reported as having been decided by Sir Christopher Robinson, after his appointment as the successor of Lord Stowell. In submitting the case to the

trinity masters, the new judge said: "The result of the evidence will be one of three alternatives: either a conviction in your mind that the loss was occasioned by accident" (meaning doubtless inevitable accident), "in which case it must be sustained by the party on whom it has fallen; or a state of reasonable doubt as to the preponderance of evidence, which will have nearly the same effect; or thirdly, a conviction that the party charged with being the cause of the accident is justly chargeable with the loss of the vessel, according to the rules of navigation which ought to have guided them." The trinity masters having declared their opinion that the loss was occasioned by accident, imputable chiefly to the improper movement of the Dart (the libelant's vessel), the learned judge declared that he adopted this opinion, "with perfect satisfaction," and dismissed the libel with costs. The question now under discussion did not, it is evident, arise in that case, nor was it at all discussed by counsel or by the court.

The subsequent case of The Maid of Auckland, decided by Dr. Lushington, in 1848 (6 Notes of Cas. 240), did, however, present the question of the rule of damages in cases of inscrutable fault, and though the question does not appear to have been discussed, either by the counsel or by the court. Dr. Lushington, in addressing the trinity masters, said, in substance, that in case they decided that they could not tell which vessel was to blame, the libel and cross libel filed in the case must both be dismissed.

The rule thus announced seems to have been adopted by the English admiralty, without controversy or discussion, and apparently without considering the difference between the common law rule, so adopted, and the rule of the maritime law, and whether the one or the other should be adopted in that court. Its adoption by the English admiralty has not been, and will not be held to be binding upon the American courts of admiralty; and though several of the district courts of the United States have adopted the rule of the maritime law, in exclusion of the common law rule, in such cases, the question is, it is supposed, still an open one in the supreme court of the United States.

Although the question had probably never been referred to in any opinion delivered in the supreme court of the United States, prior to the case of The Grace Girdler, the question was not then a new one in the admiralty courts of this country, and, as before stated, the rule of division of damages in cases of inscrutable fault had been approved by some of those courts. It had also been accepted as the established rule in this country by some of our most distinguished jurists.

Some of these authorities will be presently considered, but it may be well first to refer to the provisions of the judiciary act of 1789

[1 Stat. 76], and the process acts of 1789 and 1792 [1 Stat. 93, 276], as bearing upon this subject; and also to the rule which prevails in the maritime courts of Europe.

By the judiciary act of 1789, original cognizance of all civil causes of admiralty and maritime jurisdiction was given to the district courts of the United States, saving to suitors, in all cases, the right of a common law remedy where the common law was competent to give it; and under this act it has been held that the jurisdiction of those courts embraces all cases of a maritime nature, whether they be particularly of admiralty cognizance or not; and that such jurisdiction, and the law regulating it, are to be sought for in the general maritime law of nations, and are not confined to that of England, or any other maritime nation. Davis v. The Seneca [Case No. 3,650]; The Chusan [Id. 2,717]; Thompson v. The Catharine [Id. 13,949]; The Friendship [Id. 5,123.]

The temporary process act of 1789, provided that the forms and modes of proceeding in the courts of admiralty and maritime jurisdiction should be according to the course of the civil law; and the process act of 1792, which is still in force, provides, in substance, that "the forms and modes of proceeding in suits of admiralty and maritime jurisdiction shall be according to the principles, rules, and usages which belong to courts of admiralty as distinguished from courts of common law," except so far as might have been, or might be otherwise provided by congress or those courts.

Under these statutes, as well as from the character of the question, our courts of admiralty have naturally and properly looked to the admiralty and maritime courts, rather than to the courts of common law, for the rule of damages in collision cases; and, consequently, the rule of the division of damages, in cases of mutual fault, has been firmly established by repeated decisions; first, in the district courts, and more recently by decisions of the supreme court of the United States.

The rule of the division of damages, embracing the case of mutual fault, was recognized and sanctioned by the early maritime codes of Europe; and in cases of mutual fault, it has been adopted by the admiralty courts of England and of this country, in direct opposition to the rule of the common law. But it was not to cases of mutual fault alone that this rule of division was applied by the maritime codes and maritime courts of continental Europe; for the crude provisions of the ancient maritime codes required a division of the damages caused by a collision in the three cases of mutual fault, of inscrutable fault, and of inevitable accident. Laws of Oleron, art. 14; Laws of Wisbuy, arts. 26, 50, 67, 70; Poth. Mar. Cont., by Cushing, 91, 92, arts. 155, 156.

The provisions of the celebrated marine ordinance of Louis XIV. are, perhaps, some-

what more full, definite, and precise than those of the earlier maritime codes.

Articles 10 and 11 of title 7 of this ordinance, have been rendered into English (2 Pet. Adm. append. 57), as follows:

"X. In case of ships running aboard each other, the damage shall be equally sustained by those that have suffered and done it, whether during the course, in a road, or in a harbor."

"XI. But if the damage be occasioned by either of the masters, it shall be repaired by him." And see 2 Valin, Comm. 177–187.

The ancient rule of the division of damages, and which applied equally to the cases of mutual fault, inscrutable fault, and inevitable accident, was doubtless originally adopted because of the difficulty of determining to which vessel the fault which caused the loss should be imputed. Thus Grotius (book 2, c. 17, art. 21), in speaking of a master's liability for damage caused by his slave or beast, says:

"For the master that is not in fault, is not bound to make reparation by the law of nature; no more than he whose ship, without his fault, falls foul upon his neighbor's ship and damages it. Although by the laws of many nations, as by our own, such damages are to be equally divided between them both, by reason of the difficulty of proving the fault." And for a similar reason, the civil law made the several occupants of different parts of a house liable for damages in certain cases without proof of personal fault, unless it could be proved to whom the cause of such damages should be imputed. Domat, Civ. Law, pt. 1, bk. 2, tit. 8, § 1, art. 5.

It is true that the rule which requires a division of damages in collision cases has been much discussed, and sometimes disapproved by elementary writers and learned judges; but it has nevertheless been generally accepted as the rule in common use by the maritime courts of this country and of the European continent, and by the most eminent writers on maritime law. It has had the sanction of Cleirac, Valin, Grotius, Emerigon, Pardessus, and Boulay-Paty, and of Kent and Story, as well as that of the judges of the maritime courts. It has been considered as firmly established in the cases of mutual fault and of inscrutable fault; whilst in this country and in France, as well as in England, the civil law rule (which in this respect corresponds with that of the common law), that in the case of inevitable accident the damage must be borne by the party on whom it has fallen, has, in those cases, displaced the rule of division adopted by the ancient maritime codes.

The Code de Comm. art. 407, contains the following provisions: "In case of running foul, if the occurrence was purely accidental, the damage is borne, without remedy, by the suffering vessel. If the running foul proceeded from the fault of one of the captains, the damage is paid by the one who occasioned it. If there be a doubt which of the two vessels was in fault in running foul, the damage is to be repaired at their common expense, in equal portions between them." Code de Comm., with translation by Rodman, 1814, 232, 233. The original of so much as relates to the question now under discussion, is as follows: "S'il y a doute dans les causes de l'abordage, le dommage est réparé à frais communs, et par égale portion par les navires qui l'ont fait et souffert." Bacqua's Codes, new edition, published by Durand, in Paris, 1856.

As has been said, the ordinance of Louis XIV. made no distinction between the cases of mutual fault, of inscrutable fault, and of inevitable accident; and the Code de Commerce, while it specially adopts the rule of the civil law, and of the common law, in the case of inevitable accident, makes no express provision for the case of mutual fault. Emerig. Ins. (Meredith's Ed.) 327, apparently ignores the existence of cases of mutual fault. He says: "There are three kinds of collision—that which happens from casualty; that which happens by the fault of some one; and that which happens without it being possible to ascertain by whose fault." He further says (page 328), that in the first of these cases, "each vessel puts up with the injury it has received;" that, in the second case (page 329), "the damage shall be made good by the party who caused it." In respect to the third case, he says (pages 332, 333): "If the collision has not happened from casualty, though it is impossible to know by whose fault, it is then a case for dividing the disaster, and making each of the vessels bear one-half of the damage. Such is the sense of article 10 of the ordinance of Louis XIV. 'In case of collision of vessels, the damage shall be paid for equally by the vessels which have done and suffered it, whether on the voyage, or in a roadstead or port.'"

"Stypmanus, Kuricke and Loccenius, say that this division of the loss is prescribed by equity, and on the account of the difficulty of proof. Cleirac appears to confine it to the case where the party doing and the party suffering the damage are to blame, and their excuses are very obscure. Grotius says that, as it is difficult to prove the fault, even when it has been willful, the laws of some countries direct that in the case in question the masters of the two vessels shall bear each an equal portion of the damage. Many cases are found in our books where this division of loss has been decreed on account of the difficulty of the question." And see Arn. Ins. (Perkins' Ed.) 805.

It may be proper to observe that the quotation from Grotius, made by Emerigon, as above stated, is a different translation of a part of section 21, lib. 2, c. 17, which has been hereinbefore referred to in another translation.

Lord Tenterden says (Abb. Shipp. 229): "By the law of most of the maritime states, differing in this particular from the Roman law, which leaves each party to bear his own loss, the cost of damages resulting from collision without fault in the persons belonging to either ship, is to be divided equally between them. The same rule obtains when both vessels are to blame, and when the blame cannot be detected."

The division of damages in cases of mutual fault has been more seriously controverted than the rule which requires such division in cases of inscrutable fault; and so late as 1837, a learned and able writer on mercantile law, in the London Law Magazine, in questioning the rule in cases of mutual fault, ventured to declare that no writer on maritime law applied the rule of equal partition to any case but that of inscrutable fault. Note to Curt. Adm. Dig. 145, and 17 Law Mag. 327.[2]

And in 1848, in the case of The Bay State [Case No. 1,148], Judge Betts, of the southern district of New York, after stating that it was the first case which had occurred in that district in which the question had arisen, and after declaring himself better satisfied with the common law rule, adopted the rule of division in a case of mutual fault as having been sanctioned by Judges Ware and Hopkinson, and impliedly admitted by the supreme court of the United States in Strout v. Foster, 1 How. [42 U. S.] 92; but adding, that the principle deserved the solemn adjudication of our highest tribunals.

The American authorities, with scarcely an exception, affirm the rule of equal division in cases of inscrutable fault.

In 1847, in the case of The Scioto [Case No. 12,508], one of the most learned, as well as one of the most careful of our admiralty judges,—Judge Ware, of the Maine district, —sanctioned the rule in a very carefully prepared and able opinion; and in 1854, in the case of The Nautilus [Id. 10,058], the same learned judge again applied the rule of division in a case of inscrutable fault. And, also in 1854, the learned judge of the Ohio district, in the case of Lucas v. The Thomas Swann [Id. 8,588], unhesitatingly applied the rule of division in a case held to be one of inscrutable fault. In Jarvies v. Maine [Id. 7,224], in the southern district of New York, in 1857, the same rule was adopted under like circumstances. The rule has been acted upon in other districts, in like cases, and it is believed that in all such cases the decisions upon that question have been submitted to without appeal.

The American writers on maritime law, it is believed, without exception, accept the rule of division of damages in cases of inscrutable fault. Story, Bailm. §§ 608, 609, and notes; 3 Kent, Comm. 231; 1 Pars. Merc. Law (1st Ed.) 188; 1 Conk. Adm. (2d Ed.) 378, etc.; Bouv. Law Dict. tit. "Collision;" Fland. Mar. Law, §§ 357, 358.

It is deemed proper also to refer again to the particular language of the dictum of Mr. Justice Swayne, not for the purpose of verbal criticism, but as furnishing additional evidence that it was a hasty and inconsiderate expression, not based upon any well considered or deliberate opinion of that learned judge.

In a case of collision, the term reasonable doubt, may, perhaps, have a somewhat different signification from that given to it upon a criminal trial; but lawyers and judges accustomed to the trial of collision cases (in which, perhaps, more than in any other class of cases, the testimony is very often so conflicting and irreconcilable, that there must be reasonable doubt which party was to blame), will at once admit that if these cases are not to be decided, like other civil cases, upon the clear preponderance of testimony, the majority of those who suffer damage by collision, occasioned by negligence, will find that a remedy is often denied them when it would have been afforded by the admiralty courts under precisely the same circumstances if the new rule had not been adopted.

As further additional evidence of the same character, it may be observed that the dictum of Mr. Justice Swayne is not justified by the dictum of Sir Christopher Robinson, cited in its support. "A state of reasonable doubt as to the preponderance of evidence" in a collision case, is a very different thing from a "reasonable doubt as to which party is to blame;" for in many cases a very clear and decided preponderance of testimony may exist, and the judicial mind yet be subject to reasonable doubt as to which party was to blame.

For these reasons the dictum referred to has not been considered as binding upon this court, and its final decree in this case will provide for a division of the damages.

Decree accordingly.

[NOTE. The Lake & Transportation Company, claimants of the Comet, appealed to the circuit court, where the decree herein was reversed, and the libel dismissed. Case No. 3,-051.]

[2] In the head-note to the case of The Mary Stewart, decided in 1844, 2 W. Rob. Adm. 244, it is stated that "in cases of collision, where the evidence on both sides is conflicting and nicely balanced, the court will be guided by the probabilities of the respective cases which are set up, &c." And see The Speed, Id. 225.

Again, in The Wheatsheaf v. The Intrepide, Holt, Rule Road, 210, 212, 213, Dr. Lushington, in addressing the trinity masters, said: "I am exposed to great difficulty from the extreme contradiction in the evidence in the case;" . . . and "you must consider from the evidence the probabilities on the one side and on the other." And there was a decree for the libelants. And see The Jane and Ellen v. The Emma, Id. 207; The Saucy Lass v. The Bolderaa, Id. 205; The Esther v. The Concordia, Id. 142; The Benedetto v. The Calypso, Id. 117. In the case of The Emperor v. The Zephyr, Id. 24, it was said by the court that the evidence was so conflicting that it was impossible to reconcile it, and that in cases of that description they must be governed by the probabilities.    H.